UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05CV-449-R

MICHELLE CORNELIUS                                                                                   PLAINTIFF

v.

CMM OF KENTUCKY, LLC d/b/a CASH TYME                                                DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion to Dismiss (Docket #8). The Plaintiff has responded to that motion, and filed a Motion for Partial Summary Judgment on the breach of contract claim (Docket #11). The Defendant replied to the Plaintiff's response, and responded to the Plaintiff's motion for partial summary judgment (Docket #13). The Plaintiff has replied to the Defendant's response on her motion for partial summary judgment (Docket #15). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion to Dismiss is **DENIED**, and the Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

**BACKGROUND**

The facts are not disputed. Plaintiff Michelle Cornelius ("Cornelius") was employed as a Zone Manager for the Defendant CMM of Kentucky, LLC ("Cash Tyme") during the entire calendar year of 2004. Cash Tyme provides payday cash advances to individuals and operates approximately 100 stores in nine (9) states. There are approximately twenty-four (24) zone managers. From December 14, 2004 through January 2, 2005, Cornelius received Family Medical Leave Act ("FMLA") leave because of a case of conjunctivitis and anxiety. She returned to work on January 3, 2005, and quit on February 1, 2005.

Cornelius participated in the Bonus Program set up by Cash Tyme that rewards managers whose store revenues exceed the year-end projections set by Cash Tyme.  The program has two conditions that include calculating the bonus (revenue vs. projected revenue) and the requirement that all managers supervise stores from January 1, 2004 to December 31, 2004.  A manager receives a $1,000 bonus for making year end budget projections, and can also earn: 3% of the first $19,999 over year end projections; 7% of receipts between $14,999 and $29,999 over projections; and 10% fo receipts more than $30,000 over projections.  Cornelius' stores exceeded their year-end revenue projections.

Since leaving, Cash Tyme has refused to pay Cornelius a bonus based on her employment during 2004.  Cash Tyme stated that Cornelius was ineligible because she was on unpaid FMLA leave for the last half of December and was unable to "supervise" her store.  In response, Cornelius filed suit against Cash Tyme alleging a violation of FMLA, under 29 U.S.C. §2615 and breach of contract under state law.  Cash Tyme has submitted the affidavit of Human Resource Director Louisa Didat, which states that out of the eight (8) Zone Manager who received a bonus since 2000 none of them took an unpaid leave of absence.  Discovery has not been taken by either side.

### STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

3

existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

This is a case of first impression in the Sixth Circuit.  FMLA under 29 U.S.C. §2615(a), states in pertinent part:

> (a) Interference with rights
> (1) Exercise of rights
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (2) Discrimination
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. §2614(a)(1)(B) requires that on return from FMLA leave an employee shall "be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  Courts have held that bonuses are covered under the broad scope of FMLA. *See Dierlam v. Wesley Jessen Corp.*, 222 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002); *Estes v. Meridian One Corp.*, 6 Fed.Appx. 142, 145-46 (4th Cir. 2001).  Cash Tyme asserts that the Department of Labor distinguishes between the types of bonuses covered under FMLA, in as far as what the statute prohibits an employer from doing on return of the employee.  Cash Tyme

4

argues that the bonus covered by FMLA, the "attendance bonus," is not related to production and therefore an employee may not be disqualified for taking FMLA leave. *Dierlam*, 222 F. Supp. 2d at1057.  On the contrary, Cash Tyme contends that the  "performance bonus" may not automatically be covered by FMLA because employers look to production goals and positive actions of the employee, and that standard should be left up to the terms of the bonus agreement. *See Sommer v. Vanguard Group*, 380 F.Supp.2d 680, 684 (E.D.Pa. 2005).  However, the Fourth Circuit of Appeals, in determining whether an employee could recover commissions earned prior to and during FMLA leave, affirmed the decision by the district court holding that "'[i]f the employee is on FMLA leave during any part of the period for which the bonus is computed, the employee is entitled to the same consideration for the bonus as other employees on paid or unpaid leave.'" *Estes*, 6 Fed.Appx. at 145-46.  In order to determine whether or not Cornelius was eligible for the bonus, the Court must first determine what kind of bonus was the Bonus Program used by Cash Tyme.  After that, the Court can determine whether Cornelius met the terms of the bonus program and if Cash Tyme breached its contract.

### *Was the Bonus Program Attendance or Performance based?*

The terms of the program gave a bonus to Cornelius based upon her performance in both meeting and exceeding the year end projections.  Cornelius could receive a $1,000 bonus for making year end budget projections, and also earn: 3% of the first $19,999 over year end projections; 7% of receipts between $14,999 and $29,999 over projections; and 10% fo receipts more than $30,000 over projections.  Meeting projections is indicative of performance.  Though the period of the bonus was January 1, 2004 through December 31, 2004, the bonus was not rewarded based on the attendance of Cornelius as the terms of the reward did not specify that

requirement. As such, the bonus program was performance based.

### *Whether Ms. Cornelius met the terms of the Bonus Program*

Both parties agree that Cornelius exceeded the year-end revenue projections, leaving the Court to determine whether or not Cornelius supervised the stores from January 1, 2004 through December 31, 2004. The only time segment at issue in this matter is time that Cornelius took off for FMLA leave from December 14, 2004 through December 31, 2004.

Cash Tyme contends that because Cornelius was on unpaid leave she did not "supervise" her store during that time and should not receive the bonus. As mentioned *supra*, Cash Tyme offered the affidavit of its Human Resources Director to show that Cash Tyme had not awarded a bonus to anyone who has taken unpaid leave. Cornelius counters arguing that "supervise" is not an ambiguous term, and the Court should interpret it using a plain meaning standard. Cornelius also asserts that the contract does not explicitly mention paid or unpaid leave concerning the Bonus Program, nor does the contract in anyway go on to define the word "supervise."

In *Estes*, the Fourth Circuit Court of Appeals not only noted the broad interpretation of FMLA in its covering bonuses, but the Court also held that the employee in that matter was entitled to the bonus because the employee had earned the commissions in question, thereby satisfying the performance requirement. *Estes* at 145-46. In the instant matter, the imperative facts are that Ms. Cornelius did in fact put in the work to exceed the year end projections, and even though Ms. Cornelius was on leave for the last half of December, she never stopped ceasing to be the Zone Manager in both title and responsibility. This was apparent upon her return to her position on January 3, 2005. To deny the bonus to Cornelius after she been present for 96% of

the work year because she took the last two and half weeks off for FMLA leave during the holiday season would not only go counter to the purpose of FMLA in denying Cornelius her rights under the statute, but would also fail to reward her for her hard work and bonus she had rightfully earned. As such, Ms. Cornelius met the terms of the Bonus Program, and should have received her bonus at the appropriate time.

### *Breach of Contract Claim*

The facts in this matter are not disputed. Based on our holding *supra*, Cash Tyme breached the contract with Cornelius by not paying her under the Bonus Program. As such, the Plaintiff's Partial Motion for Summary Judgment is granted.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is **DENIED**, and the Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

An appropriate order shall issue.